# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| FLAVIO VAZ | : | DOCKET NO. 2:05-cv-1825<br>Section P |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| ALBERTO GONZALES | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 by petitioner, Flavio Vaz. In his petition, the petitioner challenges his continued detention pursuant to INA § 241(a)(6) and argues that there is no significant likelihood of his being removed in the reasonably foreseeable future. This matter was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

After reviewing the facts alleged in the petition and the answer by the respondent, it was determined that an evidentiary hearing was necessary for the adjudication of this *habeas corpus* petition and counsel was appointed for petitioner. On May 4, 2006 an evidentiary hearing was held before the undersigned for the express purpose of hearing evidence on the issues of whether there is a significant likelihood of removing Petitioner in the reasonably foreseeable future, whether the petitioner has been detained beyond what is reasonably necessary to secure his removal, and/or whether petitioner has taken steps to hamper the removal efforts of the United States Immigration & Customs Enforcement. [doc. 10].

**FACTUAL SUMMARY**

Petitioner is a native and citizen of Cape Verde who entered the United States on or about October 22, 1994.

Based upon a 2004 conviction in Rhode Island for felony assault, the immigration authorities issued a Notice to Appear on February 25, 2005 charging petitioner with being removable under INA § 237(a)(2)(A)(iii), as an alien conviction of an aggravated felony anytime after admission. *See* Government Exhibit 5.

On March 22, 2005, an immigration judge found petitioner to be removable as charged and ordered petitioner removed to Cape Verde. *See* Government Exhibit 8. Petitioner appealed this removal order and on June 28, 2005, the Board of Immigration Appeals affirmed the decision of the immigration judge. *See* Government Exhibit 10.

Petitioner was interviewed over the telephone by Cape Verdean authorities in August, 2005. *See* Government Exhibit 11, p.4. Following this interview, Immigration & Customs Enforcement (ICE) made numerous phone calls to Ms. Taverez, a Cape Verde Consulate official, regarding the status of a travel document for petitioner. *Id.* Ms. Taverez apparently informed ICE that petitioner's travel document needed to be approved by health officials in Cape Verde because of petitioner's recurring brain tumors. *Id.,* p.7.

In October, 2005, a file custody review was conducted, and it was recommended that petitioner be maintained in custody. *See* Government Exhibit 11. This recommendation was accepted, and on November 1, 2005 a Decision to Continue Detention was issued. *See* Government Exhibit 12.

By letter dated November 7, 2005, the Consul General of Cape Verde declined to issue a travel document for petitioner because of his medical condition. Specifically, the letter stated that

> We would like to inform you, per request of the mother Mr. Flavio Odair Rodrigues

> Vaz- A 43-385-758, based on his health situation and according to authentic medical records send [sic] for the evaluation of Cape Verdean authorities, that this Consulate General, is denying him a travel document. It was concluded that Cape Verde's medical system is inadequate to care for the various and complex medical needs of Mr. Vaz.
>
> It is the policy of the Government of Cape Verde not to reject requests for the issuance of travel documents for individuals that are proved to be Cape Verdean citizens facing a final order of Deportation, but in particular cases when signing a travel document means imposing a death sentence on the individual, we are forced to re-consider and sometimes refuse.

*See* Government Exhibit 13.

On November 17, 2005, the immigration officials in Oakdale, Louisiana requested assistance in obtaining a travel document for petitioner from the ICE HQ Office of Removal and Detention in Washington, D.C. *See* Government Exhibit 14.

Petitioner's deportation officer, Steven Durio, testified at the hearing that in January, 2006, control over petitioner's custody determinations was transferred to ICE's HQ Office. A file custody review is currently pending.

On April 26, 2006, Dr. Timothy Shack, Medical Director for the Department of Health and Human Services, Bureau of Primary Health Care, submitted a letter concerning petitioner's current medical condition. This letter states as follows:

> Mr. Vaz is a 22 year old male with a history of surgery to remove a brain tumor in 1997, with radiation therapy to a recurrence of the brain tumor in 2001, epilepsy since 2001, and chronic headaches since 2001. He takes medication to control his conditions. He has had no recurrence of the brain tumor since 2001. A recent CT scan of his head from June 23, 2005 shows no evidence of tumor. He will require medications to control his epilepsy and headaches. I do not have information about the type of brain tumor for which he was treated. However, I would recommend that he see a neurologist when he returns to his home country for treatment of his epilepsy and headaches.

*See* Government Exhibit 15.

Mr. Durio testified that new evidence regarding petitioner's current medical condition will be presented to the Cape Verde Consulate this week.

At the close of the hearing, petitioner's attorney argued that petitioner has been in post-removal-order custody for more than six months, that he has cooperated with efforts to remove him by providing requested information[1], and that he is entitled to be released pending his eventual removal.

The government countered that in light of the new evidence concerning petitioner's current medical condition, the petitioner has failed to carry his burden to show that his removal is not likely to occur in the reasonably foreseeable future.

## LAW AND ANALYSIS

The issue before the court is whether Petitioner's continued post-removal-order detention is lawful.

Following an order of removal, the Attorney General is given 90 days to effect the removal of the alien. INA § 241(a)(1). This 90-day period of time is referred to as the removal period. During this removal period, the alien is subject to detention. INA § 241(a)(2). If the alien cannot be removed during the removal period, the alien is generally released to supervision. INA § 241(a)(3). However, INA § 241(a)(6) authorizes the continued detention of certain inadmissible or criminal aliens, such as petitioner, if the Attorney General determines that the alien is a risk to the community or unlikely to comply with the order of removal.

In *Zadvydas v. Davis*, 121 S.Ct. 2491 (2001), the United States Supreme Court found that INA §241(a)(6), when "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United

---

[1] While there was some question initially about whether petitioner, through his mother, had taken action to prevent his removal, the undersigned finds that the government failed to produce evidence to support a finding that petitioner has hampered his removal.

States.  It does not permit indefinite detention." *Zadvydas*, 121 S.Ct. at 2498.  The Supreme Court went on to recognize six months as a presumptively reasonable period of detention for immigration detainees following a final order of removal.  *Zadvydas*, 121 S.Ct. at 2504.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut this showing.  And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas,* 121 S.Ct. 2505.

Petitioner has been in post-removal-order detention for a period of time greater than 6 months, however, the undersigned finds that the petitioner has failed to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future.

The November 7, 2005 letter from the Consul General in Cape Verde denying petitioner a travel document was expressly based upon the conclusion that petitioner had a life-threatening medical condition and "that Cape Verde's medical system is inadequate to care for the various and complex medical needs of Mr. Vaz." *See* Government Exhibit 13.  This letter also expressly indicated that the denial of a travel document for petitioner was a departure from the normal policy of Cape Verde "not to reject requests for the issuance of travel documents for individuals that are proved to be Cape Verdean citizens facing a final order of Deportation."  *Id.*  Because the new medical evidence introduced at the hearing establishes that petitioner's medical condition is not life-threatening and that it can be controlled with medication, the undersigned finds that this evidence refutes Cape Verde's only stated reason for denying petitioner a travel document.  This new medical evidence will be presented to the Cape Verde Consulate in the near future.  It is reasonable to

5

presume that in light of this new medical evidence, Cape Verde will follow its usual policy of issuing travel documents for Cape Verde citizens and issue one for petitioner in the reasonably foreseeable future.

For this reason,

IT IS RECOMMENDED that this petition be DENIED AND DISMISSED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 5th day of May, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE